UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TRANE U.S. INC. and TRANE, INTERNATIONAL INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 23-1169-JES-JEH |
| HUNZEKER SERVICE AGENCY, INC., M.E. HUNZEKER CO., THE ESTATE OF MYRON E. HUNZEKER, WILLIAM R. PILLMAN, MYRON E. HUNZEKER TRUST, as devisee and legatee of Estate of Myron E. Hunzeker, ANN E. FALADA as heir to the Estate of Myron E. Hunzeker, MICHAEL L. HUNZEKER as heir to the Estate of Myron E. Hunzeker, RANDAL S. HUNZEKER, heir to the Estate of Myron E. Hunzeker, and HUNZEKER FAMILY FOUNDATION, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER AND OPINION

This is a contract action asserted by Plaintiffs Trane U.S. Inc. and Trane International Inc. (collectively "Plaintiffs" or "Trane"), which are "100 percent subsidiaries of Delaware corporation Trane Inc. which is wholly owned by Trane Technologies Company LLC." (Doc. 4 at 2). There are three groups of Defendants, each with its own counsel. As to the first, attorney David G. Lubben represents M.E. Hunzeker Co., ("MEHCO"); Hunzeker Service Agency, Inc., ("HSA"); the Estate of Myron E. Hunzeker ("Estate"); the Myron E. Hunzeker Trust ("Trust"); Ann E. Faldada;[1] Michael Hunzeker;[2] and Randal Hunzeker, the ("Estate Defendants."). As to the second, attorney Eric D. Kaplan represents Defendant, William R. Pillman ("Pillman"), Executor of the Estate. Attorneys Matthew R. Henderson and Ambrose V. McCall. represent the remaining Defendant, the Hunzeker Family Foundation ("Foundation").

---

[1] Defendants assert that Ann E. Hunzeker is incorrectly named as Ann E. Falada. (Doc. 15 at 1).
[2] Defendants assert that Michael Hunzeker died in 2017. *Id*. at 4.

The Estate Defendants have filed a Motion to Dismiss and accompanying Memorandum of Law (Doc. 14 and 15), to which Trane has filed a Response and Affidavit (Doc. 32 and 33), and the Estate Defendants have filed a Reply. (Doc. 39). Pillman has filed a Motion to Dismiss and accompanying Memorandum of Law (Doc. 16 and 17), to which Trane has filed a Response (Doc. 34), and Pillman has filed a Reply. (Doc. 40). The Foundation has filed a Motion to Dismiss and accompanying Memorandum of Law (Doc. 35 and 36), to which Trane has filed a Response (Doc. 38), and Pillman has filed a Reply. (Doc. 41). For the reasons indicated herein, with one exception, the various motions to dismiss are DENIED without prejudice to being reasserted. The sole exception concerns 755 ILCS § 5/18-12(b) of the Illinois Probate Act. While the Estate Defendants and Pillman raise this as a timeliness issue, the Court finds that it actually implicates a jurisdictional issue. As a result, this issue is RESERVED and limited discovery will be allowed.

## BACKGROUND

In 1965, Peoria resident, Myron E. Hunzeker, established MEHCO for the purpose of selling Trane HVAC equipment. On January 1, 1966, Plaintiffs' predecessor, the Trane Company, and MEHCO entered into a Territorial Franchise Agreement ("Agreement") under which MEHCO would sell Trane products within a certain area. On April 13, 1966, Myron established the Hunzeker Services Agency, ("HSA") for the purposes of servicing Trane equipment. In 2006, Trane developed proprietary software, Tracer TU, which it describes as "a confidential, proprietary, trade secret tool that facilitates and enhances customizing and servicing Trane HVAC products." *See* amended complaint (Doc. 4 at 7). On an unidentified date, Plaintiffs licensed Tracer TU to HSA which purchased a license for each computer on which the program was installed. HSA also entered into an End-User Licensing Agreement ("EULA") with

2

Trane, agreeing not to reproduce or transfer the software and to return or destroy it the termination of the Agreement.

On August 11, 2016, Myron died, and as he was the sole shareholder of MEHCO and HSA, the companies inured to his estate. On January 27, 2017, Trane sent a letter to MEHCO and the Estate advising that it was terminating the territorial franchise agreement effective April 30, 2017. Trane claims that, following the termination, HSA continued to use the proprietary software and, when MEHCO and HSA sold their assets including computers that contained the software, the proceeds were diverted to the Estate. Trane has pled a two-count amended complaint against the Estate Defendants, Pillman, and the Foundation, alleging breach of the Agreement and EULA. (Doc. 4).

**MATERIAL FACTS**

Plaintiffs explain that MEHCO was created to "aggressively promote" Trane products, while HSA was created for the purpose of servicing Trane products. (Doc. 4 at 6). Under the terms of the Agreement, MEHCO "agreed to 'establish and maintain a business organization adequate in every way to cover the assigned territory and to serve all of [Plaintiffs'] customers properly.'" *Id*. at 5, (Doc 4-1 at 2). The Agreement was indeterminate with either party having the right to terminate on 30 calendar days' notice. Under the terms, MEHCO agreed that upon termination the two entities would transfer and deliver to Plaintiffs 'all correspondence, completed and outstanding proposals… blueprints, plans, order and sales records and other written information…" as well as "[a]ll literature, stationery, samples, confidential data, and other materials, supplies and equipment . . .". *Id*. at 4.

Trane pled that, due to MEHCO and HSA's positions of trust as Trane's "authorized sales representative[s]," Trane licensed its proprietary Tracer TU software to HSA for use in servicing Trane HVAC products. *Id*. Plaintiffs pled that the Tracer TU software could be used

remotely and was employed "across the country" by their licensees. *Id*. at 7. Tracer TU could

remotely diagnose issues with Trane equipment and provide technicians "a real-time blueprint of

the building." As a result, it could run diagnostics on large buildings "such as hospitals or

schools that may contain thousands of fans, valves, or other mechanical or electrical components

that may malfunction." *Id*. In addition to being an integral part of servicing Trane products, it

was also employed in the installation of "new Trane products into buildings with complex

HVAC systems." *Id*. at 7-8. Trane pled that it "closely guards" the software, as improper use can

result in equipment failure, equipment damage, and reputational harm to Trane.

Trane explained that it licensed the Tracer TU to authorized users who entered into an

EULA, with a license required for each individual computer. The EULA restricted the sale,

assignment, or transfer of the program and provided that, upon termination, HSA would return or

destroy all copies of Tracer TU. The EULA also provided for liquidated damages of no less than

$10,000 per month for each month that the licensee failed to comply. *Id*. at 10.

Plaintiff's assert that when Myron died on August 11, 2016, he was the sole shareholder

of both MEHCO and HSA, which then "came under the full control of the Estate of Hunzeker."

*Id*. at 12. As a result, the executor of the Estate was allegedly obligated, on behalf of MEHCO, to

perform under the terms of the Agreement and, on behalf of HSA, to perform under the terms of

the EULA.  Plaintiffs pled that the two entities continued to operate after Myron's death and the

notice of termination and, between August 11, 2016, and December 29, 2017, HSA acquired at

least seven additional Tracer TU licenses. *Id*. at 13. Trane notes that as of the date of the filing of

the amended complaint, the Illinois Secretary of State website listed Myron's son, Randal, as the

President of both MEHCO and HSA. *Id*. at 18.

As noted, in January 2017, Plaintiffs sent MEHCO and the Estate a letter terminating the Agreement as of April 30, 2017. (Doc. 1-3 at 1). In the letter, Trane requested the return of "[a]ll copies of Trane sales representative support materials, including, without limitation all software licensed or otherwise provided by Trane." *Id*. at 13. Plaintiffs claim that HSA did not comply and "wrongfully withheld 12 licenses . . . for a combined 78 months" after the termination. *Id*. at 14. Trane also alleges that on April 9, and 17, 2017, HSA acquired two 3-year Tracer TU Professional licenses and wrongfully withheld these for 72 months. *Id*. at 15.

Trane asserts on information and belief that HSA retained the licenses "with the intent to use Tracer TU and maintain HSA's ability to service customers with Trane products… until HSA could transition those customers away from Trane . . ." *Id*. at 14. On November 9, 2022, Trane sent MEHCO a letter complaining that HSA had continued to use the Tracer TU licenses after the termination of the Agreement. Counsel responded, indicating that MEHCO had dissolved in May 2021 and, prior to that, in 2017, had entered into an asset purchase agreement with Alpha Mechanical, transferring to it its remaining computers and software. *Id*. at 17. When Trane requested contact information for Alpha Mechanical, it was told that the purchase had been made subject to a confidentiality agreement and this information could not be disclosed. *Id*.

Trane alleges that after the termination of the Agreement, "HSA and MEHCO carried on as mere façade for their sole, joint shareholder, the Estate of Hunzeker," and that the assets of the Trust and Estate, which included MEHCO and HSA, were diverted and co-mingled with that of the Foundation. *Id*. at 20. Trane also claims that the proceeds from the sale of the computers and proprietary software were diverted from MEHCO and HSA to the Estate, leaving the two entities undercapitalized and frustrating Trane's efforts to enforce the liquidated damages clause of the EULA.

Trane has filed a two-count amended complaint with Count 1 directed all Defendants except HSA, alleging breach of the Agreement in violation of Wisconsin State law. Trane specifically alleges that MEHCO, and the Estate, in its capacity as sole shareholder, breached sections 5(d) and 5(e) of the Agreement regarding their obligations as to the Tracer TU program. Trane asserts that the Trust, Ann, Michael, and Randal, too, are liable for breach of contract as they "materially benefitted from MEHCO's and Estate of Hunzeker's breaches as described herein because the assets wrongly descended to each Defendant personally." *Id*. at 23.

Trane pleads that the executor of the Estate, Pillman, has "personal liability for MEHCO's and Estate of Hunzeker's breaches" as he "oversaw the distribution of diverted assets from MEHCO and HSA to the devisee and legatee Hunzeker Estate, as well as to the heirs." *Id*. at 19, 23. Trane also asserts liability on the part of the Foundation, a beneficiary under the Trust, as it "materially benefitted from the breaches as described herein because certain assets wrongly descended to the Hunzeker Family Foundation." *Id*. at 23.

Count II is directed against all Defendants except MEHCO, alleging that HSA and the Estate breached the EULA in violation of New Jersey state law. Trane asserts that "under the watch" of the Estate, HSA violated § 1, 2(c), 2(d), 3, and 14 of the EULA in that it continued to use the Tracer TU software after the Agreement had terminated and transferred the software to Alpha Mechanical, disclosing trade secrets. *Id*. at 24. Trane claims that the conduct of all Defendants proximately caused it to lose revenue, profits, and business opportunities, damaged its reputation, and caused other unspecified damages to be proven at trial.

6

## ANALYSIS

<u>Motion to Dismiss of MEHCO, HSA, the Estate, the Trust, Ann E. Hunzeker and Randal S.</u>

<u>Hunzeker</u>[3]

The Estate, the Trust, Ann, and Randal assert that they cannot be liable for breach of either the Agreement or EULA as they were not parties to the contracts. They also assert that neither the Estate, the Trust, Ann, nor Randal have liability to Plaintiffs as shareholders of MEHCO or HSA as shareholders are not liable for the contractual debts of a corporation. MEHCO denies that it violated the Agreement and HSA asserts that Plaintiffs cannot effectively plead breach of contract where it fails to plead that it performed its contractual obligations under the EULA. All of the Estate Defendants move to dismiss for Plaintiffs' failure to name the Illinois Attorney General, an allegedly necessary party. These arguments were not further entertained by the Court, however, as the Estate Defendants and Pillman raise § 5/18-12(b) of the Illinois Probate Act as a potential bar to this litigation.

Defendants assert that, as § 5/18-12(b) of the Illinois Probate Act provides a two-year "statute of limitations," Plaintiffs filed more than four years too late. (Doc. 15 at 7). Plaintiffs respond that § 5/18-12(b) does not have the force of a statute of limitations and that, under 735 ILCS 5/13-206, the 10-year statute of limitations for contract claims applies. The Court finds that neither party has accurately characterized § 5/18-12(b), and it raises a potential jurisdictional bar to these proceedings.

Section 5/18-12(b) provides in relevant part, "all claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent." *Id*. This limit it strictly construed. *See In re*

---

[3] The Motion to Dismiss is not brought on behalf of the remaining individual heir, Michael L. Hunzeker, who is said to have died in 2017. See (Doc. 15 at 4).

*Estate of Hoheiser*, 424 N.E.2d 25, 28 (Ill. App. Ct. 3d Dist. 1981) ("the filing of [t]he claim

within the period specified by statute is mandatory and cannot be waived by the administrator,

the conduct of the administrator or her attorney in this case, or by the court.") (citing *In re Estate*

*of Newcomb*, 287 N.E.2d. 141, 142 (Ill. App. Ct. 3d Dist. 1972)). Further, "where a legal claim

should have been, but was not, filed against an estate within the statutory period, relief will not

be accorded by the application of equitable principles." *In re Estate of Ito*, 365 N.E.2d 1309,

1311 (Ill. App. Ct. 1st Dist. 1977). In short, "[n]o exception to the filing period may be engrafted

by judicial decision." *Id*.

Plaintiffs' argument as to § 5/18-12(b) is two-fold; that it only applies to probate

proceedings, and that the 10-year statute of limitations for contract claims would otherwise have

precedence over § 5/18-12(b). As to the former, Plaintiffs assert in their briefing that §5/18-12

"merely sets a time limit for presenting claims for payment **in probate court** [and] [t]his Court is

not a probate court, and the Probate Act's limitation of payment of claims does not bar Plaintiffs'

ability to bring its breach of contract action." *Id*. at 20. (citing *In Re McBride's Estate*, 249 N.E.

2d 266, 269 (Ill. App. Ct. 1969) (emphasis in original)). This, however, is neither accurate nor a

faithful interpretation of *McBride*. In that case, the court considered whether § 5/18-12(b) or the

*Priority of Government Claims* statute, 31 U.S.C.A. § 191, took priority in a tax lien asserted

against an estate.[4]  The court found that § 191 applied, thereby allowing a tax claim which would

have been untimely under § 5/18-12(b). *See id*. ("The United States can collect its tax debt from

the previously inventoried assets of the estate even though the claim was filed after the

---

[4]  See *In re Estate of Funk*, 849 N.E.2d 366, 373 (Ill. 2006) ("Now codified as 31 U.S.C. § 3713, the statute has been in force since 1797 without significant modifications. It provides, in pertinent part, that '[a] claim of the United States Government shall be paid first when * * * the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.'") (citing 31 U.S.C. § 3713(a) (2000); *United States v. Emory,* 314 U.S. 423, 428 (1941)).

expiration of the time limit of the state statute."). *See also Harrison v. Deutsch*, 13 N.E.2d 511, 513 (Ill. App. Ct. 1st Dist. 1938) (finding that state law would not bind the Government proceeding in a § 191 action, "unless Congress has clearly manifested its intention that they should be so bound."). At best, *McBride* stands for the proposition that a government tax lien will trump § 5/18-12, not that the § 5/18-12 only applies in a probate proceeding.

In further support of this cramped interpretation of § 5/18-12(b), Plaintiffs cite a passage from *In re Estate of Getz*, 2023 WL 4364014, at *1 (Ill. App. Ct. 3d Dist. July 6, 2023) in which the court stated "'the probate court's jurisdiction to resolve estate matters and dispose of property in the custody of the probate court is not controlled by the federal statute of limitations.'" (Doc. 32 at 15). This only establishes that § 5/18-12(b) will prevail over a federal statute of limitations in Illinois Probate Court, not that the application of § 5/18-12(b) is restricted to probate court. Furthermore, this statement arose from a discussion of the probate exception to federal jurisdiction, something not at issue here.[5]

The *Getz* court went on to apply § 5/18-12(b), dismissing plaintiff's argument that the ERISA six-year statute of limitations preempted it. *But see Lysengen on behalf of Morton Buildings, Inc. Leverage Employee Stock Ownership Plan v. Argent Tr. Co.*, No. 20-1177, 2022 WL 854818, at *3 (C.D. Ill. Mar. 22, 2022) (applying the 6-year statute of limitations, finding that ERISA preempted § 5/18-12(b)). It appears, however, that § 5/18-12(b) is subject to preemption only where Congress has clearly indicated this intent. *See Witco Corp. v. Beekhuis*, 38 F.3d 682 (3d Cir. 1994), where the limitations period of the Delaware probate nonclaim

---

[5] The probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; [and] precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006) (citing *Marshall v. Marshall,* 547 U.S. 293, 312 (2006).

statute, not that of the federal Comprehensive Environmental Compensation and Liability Act

("CERCLA"), was found to apply. *See Lysengen*, 2022 WL 854818, at \*4 (quoting *Witco*, 38

F.3d at 689) ("the Third Circuit found that it could not conclude that Congress impliedly

preempted state probate law 'to expand a CERCLA claimant's right to seek contribution against

property of a deceased potentially responsible party . . .'").

Contrary to Plaintiffs' assertions, § 5/18-12(b) has been found to foreclose untimely

actions against an estate in a variety of civil claims including claims arising under the Illinois

Dram Shop Act, claims arising under 42 U.S.C. § 1983, personal injury actions, will contests,

actions for overdue child support, and contract actions. *See In re Worrell's Estate*, 442 N.E.2d

211, 213 (Ill. 1982) (the filing of a civil dram shop action was untimely under § 5/18-12(b));

*Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x. 543, 548 (7th Cir. 2014) (§ 5/18-

12(b) applied in a1983 claim against a deceased prison medical director); *Ezell v. City of

Chicago,* No. 18-cv-1049, 2020 WL 535130, at \*4 (N.D. Ill. Jan. 17, 2020), *report and

recommendation adopted,* No. 18-cv-1049, 2020 WL 2092876 (N.D. Ill. May 1, 2020) (finding §

5/18-12(b) applied in a 1983 claim against two deceased police officers); *In re Marriage of Ross

& Pruitt*, 30 N.E.3d 300, 306 (Ill. App. Ct. 2d Dist. 2015), *as modified on denial of reh'g,* (Apr.

2, 2015) (finding that a claim against an estate for overdue child support was untimely under §

5/18-12(b)).

The § 5/18-12(b) limitation was applied in a contract action in *Polly v. Estate of Polly,

896 N.E.2d 350, 352 (Ill. App. Ct. 1st Dist. 2008). There, the court determined that § 5/18-12(b)

foreclosed the wife's contract claim seeking to enforce the terms of a prenuptial agreement

against her husband's estate. The court affirmatively found that the contract action was a claim

"against the estate," and came under the Probate Act. *Id. See Madrigal-Santos*, 2011 WL

10071891, at \*4, discussing *Polly*, "[t]he widow's counts were contractual 'claims' against the estate . . . therefore, in accordance with section 18–12 of the Act, the widow had two years from the date of her husband's death to inform the estate of her claims." Contrary to Plaintiffs' claim, it is clear that § 5/18-12(b) applies beyond probate proceedings.

Plaintiffs' second contention is that § 5/18-12(b) cannot take precedence over a statute of limitations. Plaintiffs cite *Schloegl v. Nardi*, 234 N.E.2d 558, 561) (Ill. App. Ct. 4th Dist. 1968), for the finding that in a personal injury action, only a statute of limitations will operate as "an absolute bar." *See* Plaintiffs' Response (Doc. 32 at 15) (citing *Schloegl* at 561). However, *Schloegl* did not state that a statute of limitations took precedence over § 5/18-12(b). *Schloegl* did not discuss or even mention § 5/18-12(b), addressing only whether a plaintiff could assert a claim against an estate after it had been closed, but the personal injury statute of limitations had not yet run. The court found that plaintiff could do so, re-opening the estate and allowing the claim. There is nothing in *Schloegl* to indicate that § 5/18-12(b) was ever considered and it likely was not, as it appears that the claim against the estate and the filing of the personal injury action had been done within two years of defendant's death, so §5/18-12(b) would not have been called into question. *Id*. at 560.

Most glaring, however, is that Defendants, as well as Plaintiffs, have misapprehended the scope of § 5/18-12(b). Defendants claim that § 5/18-12(b) is a statute of limitations, while Plaintiffs claim it has less weight than a statute of limitations. The caselaw is clear that section 5/18-12(b) is actually a "nonclaim statute." *See Russell v. United States*, 260 F. Supp. 493, 498 (N.D. Ill. 1966) (explaining that a non-claim statute operates as a limitation on jurisdiction, not as a statute of limitations to which a defense may be raised). *See also Vaughn v. Speaker*, 533 N.E.2d. 2d 885, 886 (Ill. 1988) (finding § 5/18-12(b) "does not *extend* an otherwise applicable

11

statute of limitations, but instead imposes *additional* time constraints for making certain claims

against a decedent's estate.") (emphasis in original).

Section 5/18-12(b) has been recognized as "a grant of jurisdiction" and where the filing

period has passed, the trial court has no power or jurisdiction to hear a claim against the estate."

*Walstad v. Klink*, 105 N.E.3d 1016, 1020 (Ill. App. Ct. 1st Dist. 2018). *See Getz*, 2023 WL

4364014, at *3 ("The [§ 5/18-12(b)] time frame cannot be extended even for equitable reasons,

and, once it has expired, courts have no jurisdiction to adjudicate any claim against an estate.")

(citing *In re Estate of Zivin*, 46 N.E.3d 902, 907 (Ill. App. Ct. 1st Dist. 2015)). *See also Baker's*

*Estate*, 199 N.E.2d at 308-09 ("'Many courts have said that the nonclaim statute is one to be

more strictly enforced than general statutes of limitation; its object being to obtain early and final

settlement of estates so that those entitled may receive property free from encumbrances and

charges which might lead to long litigation.'") (quoting *Davis. v. Shepard*, 135 Wash. 124, 237

P. 21, 41 A.L.R. 163 (1925)).

Still, Plaintiffs insist that §5/18-12(b) does not apply where the Estate, rather than the

decedent, is liable. "The Probate Act does not bar Plaintiffs' breach of contract action against the

Estate for wrongful acts undertaken by the Estate." (Doc. 32 at 20). Plaintiffs, however, do not

cite any caselaw or offer argument in support of this distinction which may be one without a

difference. And, as Plaintiffs acknowledged in their briefing, "[t]he Seventh Circuit has

consistently held that 'perfunctory and undeveloped arguments . . . are waived.'" *Id*. at 12 (citing

*United States v. South*, 28 F.3d 619, 629 (7th Cir. 1994) (quoting *United States v. Windom*, 19 F.3d

1190, 1198 (7th Cir.1994)).

Plaintiffs further argue that if the § 5/18-12(b) nonclaim provision is allowed to trump the

statutes of limitations, the result would be "absurd" as there would be no recourse should an

estate commit a wrongful act more than two years after the decedent's death. *Id*. at 21. However,

not applying the nonclaim provision would also have consequences as the failure to efficiently

close out estates would "subject the executors and administrators to such an indeterminable

future liability that a knowledgeable person would be reluctant to accept the responsibility." *In re*

*Baker*, 199 N.E.2d at 309.

The Court finds that the breach of contract action before this Court is governed by the 2-

year limitations period provided in 5/18-12(b), rather than the 10-year statute of limitations

provided for contract claims. As a result, it appears that Trane's complaint was filed four years

too late. As Trane notes, however, the bar will not apply where the Estate is covered by a policy

of insurance. *See* § 5/18-12(c) which provides in its entirety "(c) This Section does not bar

actions to establish liability of the decedent to the extent the estate is protected by liability

insurance."

Trane requests that Defendants' motions be denied, and Plaintiffs be allowed to conduct

discovery, as "the insured status of the Estate is not yet established" and there is no "record

evidence as to the existence and details of the Estate's insurance policies." (Doc. 32 at 21-22).

The application of 12(c) is questionable, however, as here Plaintiffs deny liability on the part of

the decedent, as that section provides, claiming that liability is predicated upon the actions of the

Estate itself. Still, it is not clear to the Court whether § 5/18-12(c) might yet apply. As this

implicates a jurisdictional issue, the Court will order limited discovery as to whether the Estate

was covered by an insurance policy as contemplated under § 12(c) and, if so, whether it applies

in this case.

Plaintiffs additionally assert that if the Probate Act is found to apply, it applies only to the

Estate, not the Trust, Ann, and Randal. Plaintiffs offer two murky paragraphs in support,

asserting they have a "contingent claim" against these Defendants. (Doc. 32 at 23). As

13

Defendants point out, § 5/18-12 does not carve out an exception for contingent claims. More

importantly, "Plaintiffs never explain why their breach of contract claims are 'contingent'" as the

alleged breaches occurred in 2017. (Doc. 39 at 4). Here, Plaintiffs fail to establish, at this stage,

that their action against the Trust, Ann, and Randal does not come under the 2-year limitation of

 § 5/18-12.

The Estate executor, Pillman, also asserts various objections to the complaint, including

the bar of § 5/18-12(b). While the remaining Defendant, the Foundation, has moved to dismiss

on various grounds, it does not assert the bar of the nonclaim statute. Although the Foundation

does not raise the § 5/18-12(b) bar, this issue is jurisdictional, and it is well settled that "federal

courts are obligated to inquire into the existence of jurisdiction *sua sponte*." *Evergreen Square of*

*Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) (citing *Grupo*

*Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004)).

Accordingly, the Defendants' motions to dismiss are RESERVED to the extent they

implicate the bar of § 5/18-12(b) and the 12(c) exception to that bar. The Court will order limited

discovery on the 12(c) issues identified herein. The remaining argument in the Defendants'

motions to dismiss are DENIED without prejudice to being reasserted in a subsequent motion to

dismiss or in a motion for summary judgment, on a more fully developed record, in the event the

jurisdictional issue is resolved in Plaintiffs' favor.

### CONCLUSION

For the reasons stated above, the Court RESERVES the 755 ILCS 5/18-12(b)

jurisdictional issue and will allow limited discovery as to whether the Estate was covered by a

relevant policy or policies of insurance policy as identified in § 5/18-12(c); and whether 12(c) is

to be applied in this case to avoid the 5/18-12(b) jurisdictional bar. The matter will be referred to

Magistrate Judge Hawley for a discovery scheduling order as to this limited issue. The Court

otherwise DENIES Defendants' motions to dismiss (Doc. 14, 16, and 35), without prejudice to

being reasserted in a subsequent motion to dismiss or a motion for summary judgment.


ENTERED: This 4th day of March 2024.


                    __s/James E. Shadid__
                    JAMES E. SHADID
                UNITED STATES DISTRICT JUDGE